IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JAMES MORROW § | |
|     Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO.  2:11cv467 |
| § | |
| CITY OF TENAHA DEPUTY CITY § | |
| MARSHAL BARRY WASHINGTON, § | JUDGE:  FOLSOM |
| in his Individual and Official Capacities; § | |
| CITY OF TENAHA MAYOR § | |
| GEORGE BOWERS, in his Individual § | |
| and Official Capacities; § | |
| SHELBY COUNTY DISTRICT § | |
| ATTORNEY LYNDA K. RUSSELL, § | |
| in her Individual and Official Capacities; § | |
| SHELBY COUNTY DISTRICT ATTORNEY § | |
| INVESTIGATOR DANNY GREEN, § | |
| in his Individual and Official Capacities; § | |
| and SHELBY COUNTY PRECINCT 4 § | |
| CONSTABLE RANDY WHATLEY, in § | |
| his Individual and Official Capacities, § | |
|     Defendants § | |

## PLAINTIFF'S AMENDED COMPLAINT

1.    Plaintiff James Morrow ("Morrow") complains of Defendants City of Tenaha Deputy City Marshall Barry Washington, City of Tenaha Mayor George Bowers, Shelby County District Attorney Lynda K. Russell, Shelby County District Attorney Investigator Danny Green, and Shelby County Precinct 4 Constable Randy Whatley. For his Complaint Morrow would show:

1

# I

## Introduction

2. The Defendants' actions challenged herein are in violation of the U.S. Const. Amend. IV prohibition against unreasonable searches and seizures and the U.S. Const. Amend. XIV equal protection clause, made actionable by 42 U.S.C. §§ 1983 and 1985(3).

3. Plaintiff Morrow was driving his mother's car from his home in Arkansas through Tenaha, Texas, to see a cousin and shop in Houston, Texas, when Defendants targeted him for a traffic stop because of his race, detained and arrested him, searched him and his car, seized his car, money and cell phones, and locked him in the Shelby County Jail, all without legal justification.  These events were part of, and resulted from, the Defendants' "interdiction program", a conspiracy in which travelers who appeared to be ethnic or racial minorities were targeted for this sort of treatment, not for legitimate law enforcement purposes, but to enrich the Defendants and/or their offices.

4. Plaintiff Morrow seeks all available declaratory and injunctive relief, any other available equitable relief, compensatory and punitive damages and costs of suit, including attorney fees as authorized by 42 U.S.C. § 1988.

## Jurisdiction

5. This Court has jurisdiction over these disputes pursuant to 28 U.S.C. § 1331.

## Related Proceedings

6. Morrow's claims in this lawsuit were previously included in Morrow, et al. v. City of Tenaha, et al., 2:08cv288, a class action. In the class certification order in that case the Court defined the class to include only Fourteenth Amendment equal protection claims for declaratory and injunctive relief, explicitly excluding class treatment of all Fourth Amendment unreasonable search and seizure claims and any claims for monetary relief. Doc. 233, at pp. 25, 42-44, 52-55. The claims Morrow asserts here are his individual claims excluded from the class action for which class members have to file separate individual actions. In that case the Court also discussed that the statute of limitations for the claims excluded from the class action had been tolled from the commencement of that case on July 24, 2008 until August 29, 2011, the date of the order certifying the class. *Id.* at p. 56.

## Parties

7. Plaintiff James Morrow is an African-American, a United States citizen, a resident of Pine Bluff, Arkansas, and is authorized to sue under 42 U.S.C. §§ 1983 and 1985.

8. Defendant Barry Washington is sued in his official capacities as a City of Tenaha Deputy Marshal and as a Shelby County Deputy Constable, subject to Rule 25(d), Fed.R.Civ.P., and in his individual capacity. Defendant Washington lives in Panola County, Texas. He can be served at 976 CR 104, Carthage TX 75633-5595.

9. Defendant George Bowers is at this time sued only in his official capacity as the Mayor of the City of Tenaha. He can be served at his place of business, 122 No. Center St., Tenaha TX 75974.

10. Defendant Lynda K. Russell is sued in her official capacity as the District Attorney of Shelby County, Texas and in her individual capacity. She can be served through her counsel Tom Henson, at Ramey & Flock, 100 East Ferguson, Suite 500, Tyler TX 75702 (903-597-3301) or personally at her office at 200 San Augustine Street, Center, Texas 75935.

11. Defendant Danny Green is sued in his official capacity as a District Attorney's Investigator for Shelby County, subject to Rule 25(d), Fed.R.Civ.P., and in his individual capacity. He can be served through his counsel, Robert Davis, at Flowers Davis, 1021 ESE Loop 323, Ste. 200, Tyler Texas 75701 (903-534-8063).

12. Defendant Randy Whatley is sued in his official capacity, subject to Rule 25(d), Fed.R.Civ.P., as the Shelby County Precinct 4 Constable and in his individual capacity. He can be served through his counsel, Robert Davis, at Flowers Davis, 1021 ESE Loop 323, Ste. 200, Tyler Texas 75701 (903-534-8063).

## Common Facts

### Background Facts: The Conspiracy

13. Defendants conspired and acted together beginning in November 2006 to target people who were, or appeared to be, members of ethnic or racial minorities and those traveling with them, for traffic stops, detentions, searches, seizures, arrests and/or forfeitures without regard to the existence of legal justification. Defendants sought to

take money and/or valuables from the victims of their conspiracy, including Morrow, not for legitimate law enforcement purposes but to enrich themselves and/or their offices. Their actions have been, and here will be, referred to as the Defendants' unlawful "interdiction program."

14. Defendants Washington and Whatley agreed to participate in the interdiction program, and in furtherance of it took the following actions: abused their badges, patrol cars and appearance as law enforcement officers; unlawfully targeted travelling members, and apparent members, of ethnic or racial minority groups and those in their company for traffic stops regardless of any legal justification; detained them without legal justification; conducted unreasonable searches; unreasonably seized money and/or valuable property; unlawfully arrested these victims; shared the proceeds of the program; and other various activities to further the illegal interdiction program.

15. Defendant Bowers, as Mayor of Tenaha and with the Tenaha City Council on behalf of the City, agreed to participate in the interdiction program with the other Defendants, including Defendants Russell, Whatley, and Green, who were not part of the City of Tenaha. Defendant Bowers, with the City Council, on behalf of the City of Tenaha, acted to further the interdiction program by sanctioning, encouraging, and covering for, the program and in sharing the seized money and property.

16. At one point Defendant Bowers and the City Council briefly suspended the Defendants' interdiction program, but then quickly resumed the program.

17. Defendants Russell and her investigator Danny Green agreed with the other Defendants to participate in the interdiction program and in furtherance of it, among other actions; abused the authority of the District Attorney's office to assist other Defendants in taking possession of unlawfully seized money and/or valuable property; prosecuted bogus forfeiture actions; prosecuted, and/or threatened to prosecute, victims of the interdiction program on bogus criminal charges; intimidated the victims; coerced, and tried to coerce, the victims into waiving their rights to their money and/or property; gave the appearance that the interdiction program was legitimate; and shared in the proceeds.

18. Defendant Russell wrote up some of the procedures for other Defendants to follow and often consulted with Defendants Washington and Whatley, approving or disapproving of the treatment of victims and the interdiction program, and/or participating in interdiction activities.

19. Morrow was one of many victims of the Defendants' unlawful interdiction program.

20. Defendants' failure to actually vigorously prosecute real or alleged criminal offenses shows that their interest was to enrich themselves and their offices, not to pursue legitimate traditional law enforcement.

**MORROW FACTS**

21. Plaintiff Morrow is an African American.

22. On or about August 31, 2007, Plaintiff Morrow was driving his mother's car from his home in Arkansas, through Tenaha, Texas, on his way to shop and visit a

cousin in Houston, Texas, when he was observed and stopped by Defendant Washington on account of Morrow's race, as part of the Defendants' interdiction program.

23. Although Defendant Washington's patrol car had equipment to record this and other traffic stops, he has never produced a recording of the stop from that equipment. Washington routinely has been unable to produce usable recordings of traffic stops made under the Defendants' interdiction program.

24. Defendant Washington knows routinely recording traffic stops would create an accurate record of the stops and would resolve disputes about what actually occurred during the stops. Defendant Washington avoids recording traffic stops under the interdiction program, often relying on some excuse or pretext, to prevent the creation of evidence of the interdiction program and so that he can more easily contest what actually happened during the stops, including his stop of Morrow.

25. Defendant Washington never charged Morrow with a traffic offense of any kind that would justify the stop.

26. Defendant Washington had no legitimate legal justification for the stop.

27. Defendant Washington continued to unreasonably detain Morrow and directed Morrow to get into Defendant Washington's police car where he interrogated Morrow.

28. Defendant Washington had no legitimate legal justification for continuing to detain Morrow, placing him in the police car and/or interrogating him.

29.     Defendant Washington unreasonably arrested Morrow without legitimate legal justification.  Until Morrow was released from jail the next day Morrow remained under arrest.

30.     Among other things, during the interrogation Defendant Washington asked Morrow if he had any money.  In response Morrow said that he did have some money.

31.     At some point during the incident Washington contacted Defendant Whatley and asked Whatley to bring his dog to the scene to do an "open air sniff" around Morrow's car.  Whatley's dog is not certified to do an "open air sniff," according to Whatley's testimony.

32.     After Defendant Washington had detained Morrow for an unknown amount of time, but surely longer than necessary to have given Morrow a ticket if Washington had any real desire to do so, Defendant Whatley arrived on the scene with a dog and an operating video recorder.  Because Whatley's video camera was on a few minutes of the roadside events were recorded.

33.     Defendant Washington announced to Defendant Whatley, "If he [the dog] alerts on [Morrow's] vehicle, I'm gonna take his mama's vehicle away from him, and I'm gonna take his money," or words to that effect.

34.     Defendant Whatley proceeded to let his dog into Morrow's car and claimed that the dog "alerted" on three areas inside the car, the driver's seat, the passenger seat and behind the back seat.  In his report Defendant Whatley changed his story and wrote that the dog had alerted on a passenger side door, the console area, a black bag and a tackle box.  Whatley also claimed that his dog alerted on Morrow's "U.S. Currency",

supposedly providing Defendant Washington with "reasonable suspicion to conduct a criminal activities investigation."

35. Defendant Whatley had no legitimate legal justification for putting his dog in Morrow's car, nor did the dog signal detection of contraband.

36. Defendants Washington and Whatley then briefly continued to search Morrow's car, finding and taking approximately $3,969 and two cell phones.

37. Defendants Washington and Whatley never found any contraband in Morrow's car.

38. Neither Defendant Washington nor Defendant Whatley had any legitimate legal justification to search Morrow's car or to seize Morrow's money or cell phones.

39. Defendant Whatley left the scene, taking his video recorder, so that there is no video or audio recording of the remainder of the roadside stop.

40. Defendant Washington called Defendant Russell to get her agreement on the treatment of Morrow, and she gave her approval.

41. Defendant Washington took Morrow to a police station where some of their interaction was recorded. Morrow asked Defendant Washington when he would get his money back and Defendant Washington answered, "never."

42. Defendant Washington told Morrow that his money was "over the limit" and charged Morrow with the crime of money laundering, a felony, and had Morrow locked up in the Shelby County Jail. None of the Defendants had probable cause to believe Morrow had committed the crime of money laundering.

43. While Defendant Washington was driving Morrow to the jail, Washington told Morrow that he would be better off to just forfeit his money and not try to get it back because if he didn't try to get his money back he would not be prosecuted.

44. Defendants had Morrow's mother's car impounded.

45. As a result of Defendants' conduct, Morrow's mother had to rent a car and come to Texas to pick up Morrow. They had to stay in a hotel and pay about $200 to get her car out of impound.

46. As a result of Defendants' conduct Morrow reasonably hired a lawyer at considerable expense, $3,500 in reasonable legal fees, to defend the trumped-up money laundering charge and try to get his money back. He hired Tim James, a good lawyer in Nacogdoches, Texas

47. On September 6, 2007 lawyer Tim James wrote to Defendant District Attorney Russell, letting her know that he was representing Morrow, briefly describing the traffic stop, and asking how she wanted him to proceed.

48. On September 10, 2007 Defendant Russell wrote back to lawyer Tim James and admitted she did not have probable cause to prosecute Morrow. She said she would return Morrow's money to James the next day, and she did. She later returned the cell phones directly to Morrow.

49. Defendants had no legal justification for Morrow's traffic stop and detention, the search of his car, the seizure of his car, money and phones, the trumped up charge of money laundering against Morrow or the arrest or jailing of Morrow. These actions constitute unreasonable searches and/or seizures.

50. Defendants' actions described above foreseeably injured Morrow by, among other things, causing him: stress, anxiety and other mental injury; loss of his liberty; temporary deprivation of his property and money; and to foreseeably and unnecessarily incur additional travel, impound and legal expenses, and other things.

51. Defendants' actions described above were part of their unlawful interdiction program.

52. Defendants' actions described above were willful, malicious and/or in reckless disregard of Morrow's rights.

## **CLAIMS**

53. Defendants' actions and omissions described above are an abuse of their authority granted by state law and represent violations of Morrow's Fourth Amendment right to be free from unreasonable searches and seizures, made applicable to these Defendants by the Fourteenth Amendment, and of Morrow's Fourteenth Amendment right to equal protection of the law. Defendants are liable to Morrow for these constitutional violations under 42 U.S.C. § 1983.

54. Defendants' actions described above constitute a conspiracy for the purpose of depriving a person or class of persons of equal protection of the laws, made actionable by 42 U.S.C. § 1985(3), for which Defendants are liable for money damages.

## **RELIEF SOUGHT**

55. Morrow seeks monetary damages, and any available equitable relief no longer at issue in Cause No. 2:08cv288, from the Defendants for their violations of his

right to equal protection of the law under the Fourteenth Amendment to the United States Constitution, made actionable by 42 U.S.C. §§ 1983 and 1985(3).

56. Morrow seeks all available monetary and equitable relief available for the violations of his Fourteenth Amendment right to be free from unreasonable searches and seizures, made actionable by 42 U.S.C. §§ 1983 and 1985(3).

57. Plaintiff seeks punitive damages to punish the individual Defendants and to deter these Defendants and others from committing similar wrongful conduct in the future.

58. Plaintiff seeks all costs of suit authorized by 42 U.S.C. § 1988.

Respectfully submitted,

/S/ TIMOTHY B. GARRIGAN

Timothy B. Garrigan
State Bar No.  07703600
Stuckey, Garrigan & Castetter
P. O. Box 631902
Nacogdoches, Texas 75963-1902
Phone: (936) 560-6020
Fax: (936) 560-9578
Email:   tim@sgclaw.org

and

/S/ STEPHANIE STEPHENS

Stephanie Stephens
State Bar No. 1916055
119 North Street, Suite B
Nacogdoches TX 75961
Phone: (936)
Email:  stephens_law@att.net

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    I hereby certify that I have served all parties of record in this case including the following with a true and correct copy of the foregoing Plaintiff's Amended Complaint by sending same via FAX/hand delivery/U. S. mail, postage prepaid:

Tom Henson
Ramey & Flock
100 East Ferguson, Suite 500
Tyler TX 75702

Robert S. Davis
Chad C. Rook
Flowers Davis
1021 ESE Loop 323, Ste 200
Tyler TX 75701

Brent L. Watkins
G. Robert Alderman, Jr.
Zeleskey Cornelius et al.
P O Drawer 1728 (1616 So. Chestnut)
Lufkin TX 75902-1728

David J. Guillory
414 E. Pilar Street
Nacogdoches TX 75961

on this 22nd day of November, 2011.

                                                                        /s/ TIMOTHY B. GARRIGAN
                                                                        _____
                                                                        Timothy B. Garrigan